UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| TIMOTHY D. LASTER | ) | |
| | ) | |
| v. | ) | NO. 2:08-CV-217 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

**O R D E R**

This Social Security matter is before the Court to consider the Report and Recommendation of the United States Magistrate Judge dated July 21, 2009. In that Report and Recommendation, the Magistrate Judge recommends that the plaintiff's motion for summary judgment, [Doc. 8], be granted to the extent that the case be remanded to the Commissioner under sentence four of 42 U.SC. § 405(g) for further evaluation of the limitations imposed by plaintiff's mental impairment, and defendant's motion for summary judgment, [Doc. 15], be denied to the extent that it asserts that the plaintiff has not shown a severe mental impairment.

The defendant has filed objections to this recommendation, [Doc. 18]. After careful and *de novo* consideration of the record as a whole, including the Administrative Transcript, and after careful consideration of the Report and Recommendation of the United States Magistrate Judge, it is hereby **ORDERED** that the defendant's objections are **OVERRULED** and that the Recommendation of the Magistrate Judge [Doc. 17], is **ADOPTED** and **APPROVED,** although for somewhat different reasons than those set forth by the Magistrate Judge. It is further **ORDERED** that the plaintiff's motion for summary judgment, [Doc. 8], is **GRANTED** to the extent that the case be remanded to the Commissioner under sentence four for further evaluation of the limitations imposed by plaintiff's mental impairment, and that defendant's motion for summary

judgment, [Doc. 15], is **DENIED**.

The Magistrate Judge, in his Report and Recommendation, found that the ALJ erred at step two of the sequential five-step disability analysis by not finding that claimant suffered from a severe mental impairment. More specifically, the Magistrate Judge found that claimant had met the *de minimis* standard for showing the existence of a severe mental impairment and recommended remand of the case "to the Commissioner under Sentence Four for further evaluation of the limitations imposed by the plaintiff's mental impairment, including testimony from a vocational expert taking into account the existence of the mental impairment." While acknowledging the *de minimis* standard which applies to step two, the Commissioner objects to remand because, even though the ALJ may have erred in not finding a severe mental impairment, he nevertheless continued the evaluation process, reviewed the entire record evidence, and properly concluded that claimant was not disabled.

The Commissioner correctly states the law. When an ALJ determines that one or more impairments is severe (here, the ALJ found a severe physical impairment, degenerative disc disease of the lumbar spine), the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *5. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find an additional severe impairment at step two "[does] not constitute reversible error." *Maziarz v. Sec'y of Health & Human Sers.*, 837 F.2d 240, 244 (6th Cir. 1987). Therefore, even if the ALJ's determination that claimant did not suffer a severe mental impairment is in error, the error is not reversible if the ALJ nevertheless considered all of claimant's impairments in the remaining steps.

While it appears clear from the decision of the ALJ that he was aware of the requirement that he consider all medically-determinable impairments together if he found any one impairment severe, it does not appear that he actually did so. The evidence related to claimant's mental impairment is set forth in detail in the Report and Recommendation of the Magistrate Judge as follows:

> Plaintiff received treatment at Frontier Health from July 21, 2006 through September 8, 2006 (Tr. 243-252). Plaintiff first presented with complaints of increased symptoms of anxiety and depression, sadness, crying spells, irritability, difficulty thinking and making decision, ten pounds weight loss, insomnia, anhedonia, and negative obsessional worry. The initial diagnoses were mood disorder, anxiety disorder, and rule out borderline intellectual functioning, with a global assessment of functioning [hereinafter "GAF"] of 60 (Tr. 250-252). By July 26, 2006, Plaintiff continued to report depression, difficulty sleeping, irritability, crying spells, fatigue, anhedonia, negative self-perception, and frequent sadness (Tr. 249). On August 11, 2006, Plaintiff underwent psychiatric evaluation by Dr. Elizabet Rainey, upon referral by his therapist for evaluation and medication management. The diagnoses were mood disorder secondary to general medical condition, rule out bipolar disorder II, and rule out borderline intellectual functioning, with a current GAF of 60 (Tr. 244-246).
>
> Plaintiff underwent consultative psychological evaluation by Dr. Steven Lawhon on March 6, 2007. Plaintiff appeared to be cooperative with the evaluation and reported that he has back problems and a lot of nerve problems; that he quit school in the 8th grade and got married at the age of 16; and that he had a difficult childhood. On exam, Plaintiff's affect and mood was anxious and depressed; he recalled two presidents but did not complete serial sevens or serial threes; and he was not able to discuss current events or spell the word "world" correctly backwards. The diagnosis was dysthymic disorder, with a current GAF of 65. Dr. Lawhon opined Plaintiff's ability to understand and remember is not significantly limited; his ability to sustain concentration and persistence is not significantly limited; his social interaction is not significantly limited; and his work adaptation is not significantly limited (Tr. 253-259). [Dr. Lawhon determined that the plaintiff "does not have any impairment related mental limitations."]

. . .

Plaintiff underwent psychological evaluation by Dr. B. Wayne Lanthorn on June 29, 2007. WAIS-III testing yielded a Verbal IQ score of 68, a Performance IQ score of 58, and a Full Scale IQ score of 61. On the Reading Sub-Test, Plaintiff obtained a grade score of second grade. The diagnoses were major depressive disorder, recurrent, moderate to severe; pain disorder associated with both psychological factors and a general medical condition, chronic; anxiety disorder with generalized anxiety and panic attacks due to chronic physical problems, pain, and limitations; and mild mental retardation; with a current GAF of 45. Based on the results of his evaluation, Dr. Lanthorn felt Plaintiff is incapable of functioning in a 40-hour per week job even with simple repetitive tasks. In the attached Medical Assessment of Ability to do Work-Related Activities (Mental), Dr. Lanthorn noted Plaintiff's severe work-related mental limitations...

During psychological evaluation by Dr. Lanthorn on June 29, 2007, Plaintiff reported that he received special education services throughout his schooling and was socially promoted from the sixth through ninth grades. Dr. Lanthorn reviewed Plaintiff's school records, noted to indicate that his grades in his final two years were virtually all F's; that he was retained in kindergarten; and that his standardized achievement test results were generally comparatively low and typically from the twenty-fifth percentile and downwards. WAIS-III testing yielded a Verbal IQ score of 68, a Performance IQ score of 58, and a Full Scale IQ score of 61. Dr. Lanthorn opined that, at a 95% confidence interval, Plaintiff's Full Scale IQ would fall between 58-66. Given Plaintiff's limited educational history, poor scores on standardized testing, and that he described himself as a poor reader, he was administered the Reading Sub-Test. Plaintiff obtained a grade score of second grade with a corresponding standard score of 47, in the percentile range of .04%. Dr. Lanthorn's diagnoses included mild mental retardation. In summary, Dr. Lanthorn noted that the results of the psychological evaluation and Plaintiff's school records indicate that he has suffered from mild mental retardation throughout his lifetime and has extremely limited academic/educational skills and, in fact, his reading skills are barely at the second grade level (Tr. 320-330).

While the ALJ noted the psychological report of Dr. Lanthorn, his report and opinion was "rejected" because "[i]t is not supported by the documentary evidence and is inconsistent with

4

other more reliable evidence of record." The ALJ simply disregarded the IQ scores in the 58-61 range because he "takes administrative notice of the fact that employers in the national economy generally do not retain an employee if they lack the individual skills to perform the job" and notes that claimant had worked for a construction company for three years and as a mechanic for three years and there was no evidence he was fired for lacking the mental skills to perform those jobs. The ALJ did not further explain his rational for rejecting the opinion of Dr. Lanthorn. On the other hand, the ALJ accepted the opinion of Dr. Lawhon without explanation. Although finding that there was no evidence that claimant "is severely anxious or depressed," the ALJ does not acknowledge claimant's treatment at Frontier Health and his diagnosis of anxiety and depression nor does the ALJ acknowledge and discuss claimant's global assessment of functioning ("GAF") of 60 at Frontier Health or his GAF of 60 upon psychiatric evaluation by Dr. Elizabet Rainey. Likewise, the ALJ does not discuss Dr. Lawhon's diagnosis of dysthymic disorder, with a current GAF of 65 or Dr. Lanthorn's finding of a current GAF of 45.[1]

---

[1] The global assessment functioning score rates "overall psychological functioning" on a scale of 0 to 100, with a score of 100 indicating "superior functioning." *Ladwig v. Comm'r of Soc. Sec.*, 2002 WL 1491872 at *4n.5, 39 Fed. Appx. 971 (6th Cir. July 11, 2002) (citing *American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders 34* (4th ed. 2000)). A GAF score of 60 indicates a moderate impairment in psychological functioning. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 503 (6th Cir. 2006) (explaining that a "GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflict with peers or co-workers)."). *Id.* (internal quotation marks ommitted). GAF is a clinician's suggestive rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a layperson of an individual's mental functioning. *Id*. at n.7.
Although the Commissioner of Social Security "has declined to endorse the [GAF] score for 'use in the Social Security and SSI Disability Programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings,'" *Deboard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 Fed. Appx. 684, 691-92 n.5 (11th Cir. 2005)). While the GAF scores are not raw medical data, the ALJ did not explain, nor seek a professional's explanation, of how this data is reflective of the claimant's individual mental functioning.

In sum, the ALJ, while acknowledging his responsibility to do so, did not clearly consider all of the record evidence and all of the plaintiff's impairments, both severe and non-severe, in arriving at his disability determination. Furthermore, the ALJ does not explain adequately his decision to reject the opinion of Dr. Lanthorn and credit the opinion of Dr. Lawhon. The ALJ's opinion in this case simply does not indicate that he considered all of the record evidence or that he provided a sufficient explanation for his findings in the case. For these reasons, the Magistrate Judge's recommendation is **AFFIRMED**.

So ordered.

E N T E R:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE